IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODI GILL, as Representative and Next Friend of GLENN OSCAR GILL, a Long Term Care Facility Resident, on his behalf and on behalf of all others Similarly Situated<br><br>and<br><br>GREG HUBERT, as Representative and Next Friend of NETHIA KNIGHT, a Long Term Care Facility Resident, on her behalf and on behalf of all others Similarly Situated<br><br>              Plaintiffs,<br><br>    vs.<br><br>PENNSYLVANIA DEPARTMENT OF HEALTH | Hon. Harvey Bartle<br><br>Case No. 20-cv-02038<br><br>CLASS ACTION |

Robert L. Sachs, Jr. Esq (#41355)
Theresa M. Blanco, Esq (#77468)
Shrager & Sachs
2300 One Commerce Square
2005 Market Street
Philadelphia PA 19103
(215) 568-7771
rsachs@shragerlaw.com
tblanco@shragerlaw.com

Peter D. Giglione, Esq. (#89523)
Massa, Butler, Giglione
Three Gateway Center
Suite 1543
401 Liberty Avenue
Pittsburgh, PA 15222
(412) 338-1800
pgiglione@mbp-law.com

*Attorneys for Plaintiffs and the Class*

Martin S. Kardon, Esq. (#26759)
Kanter, Bernstein & Kardon PC
1617 JFK Boulevard, Suite 1150
Philadelphia, PA 19103
215-568-5885
kardon@kbklaw.com

Robert F. Daley, Esq.(#81992)
D. Aaron Rihn, Esq.
Robert Peirce & Associates, P.C.
707 Grant Street, Suite 125
Pittsburgh PA 15219
(412) 281-7229
bdaley@peircelaw.com

*Attorneys for Plaintiffs and the Class*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

The Pennsylvania Department of Health (DOH) has abrogated its duty to the most fragile Pennsylvanians – the 75,000 citizens who reside in nursing homes. This is an enormous group of disabled individuals who have no recourse to protect their own health and safety in the current public health emergency. The one Commonwealth agency tasked with their protection has failed in that duty. The actions of the DOH violate several federal statues designed to protect the disabled. If the Court orders the DOH to undertake appropriate actions to safeguard the health and well-being of these citizens, the ongoing problem will be remedied for all Pennsylvania nursing home residents. This is a textbook example of a situation warranting class-wide treatment under Federal Rule of Civil Procedure 23(b)(2). All of the elements of Rule 23(a) and 23(b) are easily satisfied here:

- *Rule 23(a)(1) (numerosity)*: the proposed class numbers over 75,000 individuals. There can be no question that this satisfies the numerosity requirement.

- *Rule 23(a)(2) (commonality)*: The policies of the Department of Health are common to all members of the proposed class.

- *Rule 23(a)(3) (typicality)*: Plaintiffs will be able to obtain immediate and meaningful relief in the form of assistance to diagnose, monitor and survive infection with SARS-CoV2 (the virus that causes COVID-19).

- *Rule 23(a)(4) (adequacy of representation)*: Plaintiffs and their counsel will represent the interests of the proposed class vigorously and fairly; and

- *Rule 23(b)(2) (injunctive/declaratory relief)*: Equitable relief from this Court will end the Department of Health's injurious conduct for all members of the proposed class.

I. **BACKGROUND AND INTRODUCTION**

The Plaintiffs in this action each have loved ones in a Pennsylvania nursing home (interchangeably referred to as a Long Term Care Facility or LTCF herein). Their loved ones have been exposed to

COVID-19 and are at high risk for contracting the virus, as are each of the thousands of nursing home residents in the Commonwealth.[1]

The Department of Health has failed to inspect LTCFs since approximately mid-March with the sole exception of Immediate Jeopardy complaints.[2] One of the Immediate Jeopardy complaints involving Brighton Rehabilitation and Wellness (the facility in which Plaintiff Glenn Oscar Gill is a resident) was reclassified to remove it from that category. The DOH has stated that infections with COVID-19 do not constitute Immediate Jeopardy. Given the high incidence of morbidity and mortality with COVID-19 infection in the over-65 age group, and especially in those with underlying pre-existing conditions, the DOH did not follow the appropriate guidelines to determine Immediate Jeopardy.

Without inspections, there is no way for the DOH to monitor infection control training and compliance. To be clear, this is not a simple bacterial infectious outbreak where several residents might be exposed to a staph bacteria. This is a viral pandemic involving a zoonotic virus to which no one has immunity and for which there is no vaccine or pharmacological treatment.

It is in this setting that the Department of Health has failed its duty to each nursing home resident. As alleged in the complaint, DOH has not only failed to inspect and oversee infection control, it has failed to provide for any safety measures for these residents: no standard patient monitoring is in place; no testing is in place;[3] there is insufficient personal protective equipment (PPE); there is insufficient staff training to handle this specialized situation; the nursing home residents are being treated differently from their non-disabled non-residents and they are being excluded from appropriate safeguards and treatment.

---

[1] Plaintiffs are acting pursuant to legally binding powers of attorney on behalf of family members who are residents of LTCFs in Pennsylvania.
[2] Survey and certification of Long-Term Care Facilities (Skilled Nursing Facility (SNF), Nursing Facility (NF), and/or dually certified SNF/NF) - §488.301 Immediate Jeopardy means a situation in which the provider's noncompliance with one or more requirements of participation has caused or is likely to cause serious injury, harm, impairment, or death to a resident. State Operations Manual, Apdx Q, p. 22. The entirety of Appendix Q is attached hereto as Exhibit "H" to demonstrate the process of determining immediate jeopardy.
[3] The guidance issued on May 12, 2020 is at Exhibit "G", p 6.

The policies of the DOH in this situation are at odds with proper public health emergency management.[4] This lawsuit alleges that the Department of Health has, through its policies and omissions, discriminated against this class of fragile, disabled elderly Pennsylvanians, infringing their rights under federal law. The DOH has failed to plan for a public health emergency for this group and has consistently failed to include them in the safeguards and recommendations made to others under the jurisdiction of the DOH.

The policies of the DOH are often communicated in notices known as Guidances or in Health Action Notices (HANs) which are published on the DOH website.[5] The impact of the policies (or lack thereof) cannot be overstated: nursing home residents have been left on their own in facilities which do not have the training, equipment or staffing to deal with the extent of this emergency. At some point, early in the evolution of this pandemic, DOH did realize that it needed to act and crafted a "Strike Force" Plan to address these needs.  That plan of action to address the pandemic in the LTCFs of Pennsylvania, for reasons that remain unclear, was never implemented.[6] Now, some eight weeks later, nursing home residents are still at risk, more are ill with COVID-19 and many more are at imminent risk for contracting a virus that has been known since early January to spread exponentially with an $R_0$ of two to three.[7]

This characteristic transmissibility of this virus and the lack of appropriate DOH policies is important. The virus is well-documented – new studies and journal articles are published every day with more information. The policies of DOH affect all nursing home residents equally. A policy that does not provide for PPE and testing (and fails to put into place the practical means to accomplish it) puts every resident at risk. It is the same for the failure to implement mitigation, monitoring, and other safeguards.

---

[4] This issue will be further addressed in Plaintiffs' Motion for Preliminary Injunction

[5] All of the HANs issued since January 1, 2020 can be found here:  https://www.health.pa.gov/topics/prep/PA-HAN/Pages/2020-HAN.aspx There have been only two Guidance documents and one HAN issued with regard to nursing homes since January 1, 2020. The first Guidance was March 18th. The Second Guidance was May 12th along with a HAN describing the procedure for Point Prevalence Surveys (but declining to assist in conducting them).

[6] See Exhibit "G", p. 6.

[7] The R-naught, expressed as $R_0$ is the number of people a single person will infect if they have the virus. The $R_0$ for SARS-CoV2 is 2-3. This means that each infected person will infect two to three others, and that those two to three other people will <u>each</u> infect two to three others. This is known as exponential spread.

Merely because the specific disease progression, or risk of disease transmission, may be slightly different for each resident, they are each at high risk for a bad outcome. The DOH's failure to properly manage this situation has resulted in even more risk.

The stated mission of the Department of Health is "to promote healthy behaviors, prevent injury and disease, and to assure the safe delivery of quality health care for all people in Pennsylvania. We strive every day to build healthy communities and a healthy Pennsylvania. Our approach to achieving the mission is to work at the community level with our trusted partners and bring resources from capital to community." As it applies to nursing homes residents, its mission has failed.

The DOH policies (Exhibit "G" 2-5; 19-25) are not the "Strike Force" apparently envisioned in early March. Instead of teams of medical professionals swooping in to help each facility as it reported infections, DOH issued a "Guidance" on March 18th (Exhibit "G" 2-5) which had no real logistics plan, or treatment plan, or plan to get help to facilities, or guide for facilities to use in the absence of a team of public health and infectious disease professionals. It is this lack of real policy guidance and an unwillingness to put its people into facilities to help, that created this class of grandmothers and grandfathers, spouses and siblings, who are at the mercy of an agency which has abrogated is mission and its duty.

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Here, Plaintiffs' claims are particularly well-suited for class treatment. Courts routinely recognize that cases alleging systemic constitutional violations in a congregate setting and seeking facility-wide or system-wide declaratory and injunctive relief fit the mold for class certification. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011); *Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015); *Hagan v. Rogers*, 570 F.3d 146 (3d Cir. 2009); *Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988); and in cases seeking systemic change. *See, e.g., Neal v. Casey*, 43 F. 3d 48 (3d Cir. 1994); *S.R. v. Pa. Dep't of Human Services*, 325 F.R.D. 103 (M.D.Pa. 2018).

As demonstrated below, class certification is appropriate in this case because the Plaintiffs and the Proposed Class satisfy the requirements of Rule 23(a) and Rule 23(b)(2). This Court should exercise its broad discretion in favor of certifying a class, with the Plaintiffs as class representatives, so that Plaintiffs and the Proposed Class can seek to enjoin the Pennsylvania Department of Health from continuing to discriminate against the disabled individuals who comprise the proposed Class.

II.     **ARGUMENT**

"Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc) (quotation marks and citations omitted). The legal standard for determining whether class certification is appropriate is that the proposed class must satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the alternative requirements of Rule 23(b).

Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to the maintenance of a class action suit:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

F.R.Civ.P. 23 (a).

In addition, when plaintiffs seek certification under Rule 23(b)(2), the defendant must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." All of

the requirements of Rule 23(a) and (b)(2) are met here.

### A. The Proposed Class Satisfies the Numerosity Requirement

Rule 23(a)(1) provides that class certification is appropriate only if "the class is so numerous that joinder of all members is impracticable." The rule "does not require any particular number or require that joinder of all members be impossible, so long as a good-faith estimate of the number of class members is provided." *Stewart v. Assocs. Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998) (footnote omitted). Plaintiffs need not specify the "exact number or identity of the members of the plaintiff class." *Hanrahan v. Britt*, 174 F.R.D. 356, 362 (E.D. Pa. 1997). "There is no magic number of class members needed for a suit to proceed as a class action," but the third circuit has "set a rough guidepost in our precedents . . . and stated that numerosity is generally satisfied if there are more than 40 class members." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Plaintiffs are entitled to use circumstantial evidence to provide a good-faith estimate, after which the Court may "rely on 'common sense' to forgo precise calculations and exact numbers." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012). The Proposed Class numbers in excess of 80,000 individuals.[8] The numerosity requirement of Rule 23(a)(1) is therefore satisfied.

### B. There are questions of law and fact common to the entire Proposed Class.

This Proposed Class meets the commonality requirement of Rule 23(a)(2), which "does not require that the representative plaintiff[s] have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988). This means that whether

---

[8] More than 80,000 individuals reside in over 700 nursing homes in the state: https://www.health.pa.gov/topics/facilities/nursing%20homes/Pages/Nursing%20Homes.aspx (last accessed May 13, 2020).

class members' claims are common depends on whether there is a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve any issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Logory v. Cty. of Susquehanna*, 277 F.R.D. 135, 141 (M.D. Pa. 2011) (noting commonality is not determined by the existence of class-wide questions "but instead the potential for a 'class-wide resolution'").

"Commonality does not require perfect identity of questions of law or fact among all class members. Rather, 'even a single common question will do.'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 359). "Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "[C]ommonality is not defeated by a showing that 'individual facts and circumstances' will have to be resolved." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 392 (E.D. Pa. 2001) (quoting *Baby Neal*, 43 F.3d at 57).

Injunctive actions, by their very nature, often present common questions satisfying Rule 23(a)(2) "because they do not also involve an individualized inquiry for the determination of damage awards." *Id.* at 57. Actions seeking an injunction against a common policy imposed on incarcerated inmates have repeatedly been found to raise common questions in this circuit. *See, e.g.*, *Hagan v. Rogers,* 570 F.3d 146, 158–59 (3d Cir. 2009) (reversing district court's denial of class certification when plaintiff alleged common threat of injury to incarcerated population); *Logory*, 277 F.R.D. at 143; *Dittimus-Bey v. Taylor*, 244 F.R.D. 284, 290 (D.N.J. 2007). For disease-transmission purposes especially, the comparison

to nursing home residents as a protected disabled class cannot be underestimated in this context.

Commonality is easily established in this case. The Proposed Class members are all current or future nursing home residents who are or will be imminently affected by the ongoing SARS-CoV2 pandemic. Questions of law or fact common to the Proposed Class include, but are not limited to the following:

1. Whether the PA DOH policies violate the Americans with Disabilities Act and the Rehabilitation Act because its policies treat this disabled class differently thereby ensuring a worse outcome, than others who are not disabled;

2. Whether the PA DOH policies violate the Affordable Care Act

3. Whether the PA DOH policies violate the Federal Nursing Home Reform Amendments and Section 1983 of the Civil Rights Act.

4. Whether the PA DOH policies violate the Social Security Act and its regulations

5. Whether the PA DOH Policies allow the Proposed Class members any adequate alternative means of safeguarding their health and safety

6. Whether the requested relief would impose a significant burden on the PA DOH's resources; and

These questions of law are common to all members of the Proposed Class, and the commonality requirement of Ruled 23(a)(2) is thus satisfied.

**C. The claims of the named Plaintiffs are typical of those of the Proposed Class.**

The next requirement of Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to assure that the claims of the named plaintiffs and the class "are so interrelated that the interests of the class members will be fairly and adequately

protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982). Here, as children acting pursuant to durable powers of attorney, on behalf of their parents and grandparents who are nursing home residents, plaintiffs are members of the Proposed Class and have claims that are typical of the Proposed Class.

"If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). "The criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Id.* at 183 (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). The third circuit has consistently directed attention to the purpose of the typicality provision. *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) ("[T]he named plaintiffs' claims must merely be typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." (internal quotation marks and citation omitted)). Claims challenging conduct that affects the named plaintiffs as well as the other class members, such as the claims in the instant case, "usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Baby Neal*, 43 F.3d at 58 (internal citation omitted); *accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).

Here the claims of Mr. Gill and Ms. Knight are typical of those of the Proposed Class because Plaintiffs' claims arise from and challenge the same unlawful conduct by the DOH

that affects the Plaintiffs as well as all other Proposed Class members.

### D. The Plaintiffs will fairly and adequately protect the interests of the Proposed Class.

To meet the final requirement of Rule 23(a), the named plaintiffs must fairly and adequately protect the interests of the proposed class. "[A]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (quotation marks and citation omitted). Plaintiffs in this case satisfy both factors.

Plaintiffs' attorneys are qualified and experienced in civil rights litigation, including class actions, as well as in representing plaintiffs in civil matters involving complex areas of law and medicine. The attached declarations summarize relevant experience of the attorneys for Plaintiffs and the Proposed Class:

- Attorney Martin Kardon has been practicing law since 1977. He has been past Chair of the Nursing Home Litigation Group of the American Association of Justice from 2013 to 2014. He as litigated cases involving the frail elderly all over the Commonwealth. Attorney Kardon's Declaration is attached hereto as Exhibit "A".

- Attorney Robert L. Sachs, Jr. has practiced law since 1984. He has been active in mass torts litigation and was Past Chair of the Nursing Home Litigation Group of the American Association for Justice from 2011 through 2012. He has tried numerous cases to verdict in his 36 years of practice. He has been appointed as a Hearing Examiner by the Disciplinary Board of the Pennsylvania Supreme Court. Attorney Sachs's Declaration is attached hereto

as Exhibit "B".

- Attorney Theresa Blanco has practiced law since 1996. She has handled more than a dozen complex medical malpractice cases involving the interplay between disability discrimination and access to appropriate medical care under the Rehabilitation Act. She has represented clients in complex medical cases across the country. Ms. Blanco's Declaration is attached hereto as Exhibit "C".

- Attorney Robert F. Daley has been practicing law for 20 years. That practice has been devoted almost exclusively to the representation of the frail elderly and their families. He has served as an officer and Chair of the Nursing Home Litigation Group of the American Association for Justice, and he has taught continuing education courses on nursing home litigation. Attorney Daley's Declaration is attached hereto as Exhibit "D".

- Attorney D. Aaron Rhine has been practicing law since 2000. He has extensive experience in class action litigation, as well as civil rights and nursing home litigation. He served on the Plaintiff's Class Action Steering Committee in the Federal Prempro MDL. A listing of his class action cases is contained in the attached Declaration at Exhibit "E".

- Attorney Peter D. Giglione has been practicing law since 2002. His practice heavily involves representing nursing home residents and their families in cases involving alleged abuse, neglect and wrongful death. He is also an adjunct professor of law and the coordinator of the Trial Advocacy Program at the Duquesne University School of Law. He frequently lectures at continuing education courses involving nursing home neglect and abuse. Attorney

Giglione's Declaration is attached hereto as Exhibit "F".

Together, Plaintiffs' counsel provide "assurance of vigorous prosecution" of the class claims as required by Rule 23(a)(4). *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 129 (3d Cir. 1987) (quotation marks and citation omitted).

Second, as explained in the typicality section, Plaintiffs' interests align with the interests of the Proposed Class as a whole. Plaintiffs do not have any interests antagonistic to those of any other member of the Proposed Class. Antagonism may exist between the named plaintiff and other class members when a unique defense could be asserted against a plaintiff that would distract from the class claims or defenses. *See, e.g.*, *Williams v. City of Phila.*, 270 F.R.D. 208, 222 (E.D. Pa. 2010) (finding that the named plaintiffs "fairly and adequately protect the interests the named plaintiffs' attention at trial"). No such circumstances are present here. On the contrary, the Plaintiffs' interests coincide with those of the Proposed Class to seek a declaration that the DOH policies are in violation of federal law, as well as a permanent injunction that would prohibit DOH from further implementing such patterns, practices, and policies that would discriminate against Plaintiffs and the Proposed Class. Plaintiffs are not seeking any relief that would be different from the relief that would apply to the entire Proposed Class. The granting of the relief sought by Plaintiffs would benefit the Proposed Class members and would not impair any future Proposed Class member's claims.

Accordingly, this Proposed Class meets the Rule 23(a)(4) adequacy requirement.

### E. The Plaintiffs meet the requirements of Rule 23(b)(2).

Rule 23 also requires Plaintiffs to satisfy one of the provisions of Rule 23(b).

Different subsections of Rule 23(b) impose different requirements on litigants in order for this court to properly certify a class. Rule 23(b)(2) and Rule 23(b)(3) "actually create two remarkably different litigation devices." *Shelton v. Bledsoe*, 775 F.3d 554, 561 (3d Cir. 2015). One key difference is that Rule 23(b)(2) contains no opt-out requirement for potential class members, as compared to the "additional procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members." *Id.* at 560 (internal citation omitted). "Because there is no right to opt out from such a class," *id.* at 561, Rule 23(b)(2) provides that a class action may be maintained when the defendant "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Sullivan*, 667 F.3d at 317. "To meet this requirement, the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of *res judicata*." *Jeffes*, 846 F.2d at 179.

The third circuit has "instructed that [23(b)(2)] classes must be cohesive" to qualify for certification. *Shelton*, 775 F.3d at 561. A class is cohesive when the claims are "homogenous without any conflicting interests between the members of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 248–49, 256 (3d Cir. 1975). As the United States Supreme Court has explained, "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks and citation omitted). Thus, a showing that a single injunction or declaratory remedy will provide relief for the entire class satisfies the Third Circuit's

cohesiveness requirement. *E.g.*, *Sourovelis v. City of Phila.*, 320 F.R.D. 12, 25 (E.D. Pa. 2017) (certifying a class of individuals challenging the government's civil forfeiture policy because a declaration that the policy was unconstitutional would benefit the entire class and because challenging the constitutionality of the policy did not implicate "'disparate factual circumstances'"); *See, Woods v. Marler*, 2018 U.S. Dist. LEXIS 47044, 2018 WL 1439591 (E.D.Pa. 2018) (holding that class certification is proper where the relief sought was indivisible in nature and that relief could be granted without harming the individual class members' rights).

With respect to actions concerning policies implemented by a common defendant, "[i]njunctive actions, seeking to define the relationship between the defendant and the 'world at large,' will usually satisfy the requirement" for class-based commonality. *Sullivan*, 667 F.3d at 318 (citing *Baby Neal*, 43 F.3d at 59). Indeed, under Rule 23(b)(2), "class cohesion . . . is presumed where a class suffers from a common injury and seeks class-wide injunctive relief." *Barabin v. Aramark Corp.*, No. 02-8057, 2003 U.S. App. LEXIS 3532, at *5 (3d Cir. Jan. 24, 2003). For example, the third circuit has rejected 23(b)(2) classes in cases involving proposed classes of individuals who suffered varying injuries from the same conduct of a defendant, "[b]ecause causation and medical necessity often require individual proof." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011) (collecting cases). When, however, injunctive relief predominates over individual requests for damages, 23(b)(2) actions are more appropriate. *Id.* At 262. Here, the Proposed Class seeks injunctive relief from common policies applied equally to each of them, which has created the same injury—the infection with or imminent threat of infection with COVID-19.

The third circuit has stated that the requirements of Rule 23(b)(2) are "almost

automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Rule 23(b)(2) is especially appropriate for actions like this one because of the potential for common resolution through declaratory and injunctive relief. *Williams*, 270 F.R.D. at 222 ("Numerous courts have held that Rule 23(b)(2) is an appropriate vehicle in actions challenging prison conditions."). While the comparison here is not to equate nursing home residents with prisoners, the comparison for the purposes of demonstrating a distinct group subject to the policies of the governmental agency charged with caring for them is accurate, especially given their status as a protected class of disabled individuals.[9]

Plaintiffs' action falls squarely in the group of cases contemplated by Rule 23(b)(2): It is a civil rights and equitable action brought in response to DOH's policies and inaction that affect each Proposed Class member in precisely the same way. *See, e.g.*, *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 302 n.14 (3d Cir. 2005). It seeks declaratory and injunctive relief that would benefit all of the members of the Proposed Class. The Proposed Class is cohesive because there is no need to inquire into disparate factual circumstances. *See, e.g. Sourovelis v. City of Philadelphia*, 320 F.R.D. at 25. For these reasons, class certification under Rule 23(b)(2) is appropriate.

---

[9] Courts in the Third Circuit have a long history of using Rule 23(b)(2) to adjudicate claims involving treatment of inmates. *E.g.*, *Williams,* 270 F.R.D. at 222 (certifying Rule 23(b)(2) class of inmates); *Colon v. Passaic Cty.*, No. 08-cv-4439, 2009 U.S. Dist. LEXIS 45151, at *16–18 (D.N.J. May 27, 2009) (certifying class of those who were currently, or would become, incarcerated in Passaic County Jail); *Dittimus-Bey v. Taylor,* 244 F.R.D. 284, 293 (D.N.J. 2007) (certifying Rule 23(b)(2) class of individuals incarcerated at Camden County Correctional Facility on overcrowding claim); *Death Row Prisoners of Pa. v. Ridge,* 169 F.R.D. 618, 623 (E.D. Pa. 1996) (certifying Rule 23(b)(2) class of death-row detainees).

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' Motion and certify the class proposed by the Plaintiffs.

Respectfully submitted,

SHRAGER & SACHS

By: /s/ Theresa M. Blanco
_____
Theresa M. Blanco, Esquire

May 13, 2020